UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DOUGLAS W. GRIFFIN, AS EXECUTOR OF THE
ESTATE OF WILLIAM L. GRIFFIN,

                        Plaintiff,                  11-CV-6050

           v.                             **DECISION**
                                         **and ORDER**
CORNING INCORPORATED,

                        Defendants.
_____

## INTRODUCTION

    Plaintiff, Douglas W. Griffin ("Plaintiff"), brings this action pursuant to the Employee Retirement Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), as executor of his father, William L. Griffin's estate. Plaintiff seeks payment for medical care received by his father prior to his death at Robert Packer Hospital (the "Hospital") in Sayre, Pennsylvania, from December 31, 2008 to February 17, 2009, the date of his death. Compl., Docket No. 1. Plaintiff's father was eligible for benefits under an employee welfare benefits plan (the "Plan") governed by ERISA, sponsored by Defendant, Corning Incorporated, and administered by the Corning Benefits Committee (the "Plan Administrator").

    Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") claiming that it is entitled to judgement as a matter of law, as the undisputed facts reveal that Plaintiff is not entitled to payment under the

Plan because Medicare provided payment-in-full to the Hospital and he has no outstanding financial liability with respect to his father's treatment at the Hospital from December 31, 2008 to February 17, 2009. Plaintiff opposes the motion, citing language in the Plan which he contends entitles him to payment regardless of whether his father's estate has any financial liability to the Hospital.  For the reasons set forth herein, this Court grants Defendant's Motion for Summary Judgement and Plaintiff's Complaint is hereby dismissed with prejudice.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

After reviewing Defendant's statement of facts[1], Plaintiff's submissions in opposition to this motion, and the entire administrative record, this Court finds that the following facts are not in dispute.

Plaintiff's father, as the spouse of a retired Corning Incorporated employee, was eligible to receive certain benefits under the Plan.  Pursuant to the Corning Medicare Supplemental Plan, the Plan coordinates payment of certain medical expenses with Medicare when a plan participant turns 65.  Under this scheme, Medicare becomes the primary insurer and the Plan provides secondary coverage.  Plaintiff's father was over 65 at all relevant

---

[1]Plaintiff has not submitted a statement of material facts in dispute. See Discussion, infra at 7-8.

times, and therefore, his primary insurer was Medicare and the Plan provided secondary insurance coverage.

The Plan provides "full discretionary authority" to the Plan Administrator to determine all questions about the Plan, including questions regarding the eligibility for benefits.  The Plan also authorizes the Plan Administrator to engage a third party administrator or insurance company and to delegate its discretionary authority to such an entity. In this case, pursuant to an Administrative Services Agreement, the Plan Administrator delegated its discretionary authority to UnitedHealthcare Service Corp. ("UHC").

The Plan, in pertinent part, provides as follows: "If you or members of your family are covered by ... a government medical insurance program, ... your total benefits from all sources will be limited to 100% of reasonable and customary charges for the medical expenses incurred."  The Plan also provides, "When a Corning medical plan is the secondary payer, it pays benefits so that your total medical plan does not exceed 100% of reasonable and customary charges for the covered service."  UHC "pays 80% of the difference between the Medicare-allowable amounts and Medicare-paid amounts after a $250 annual deductible is met, up to $300,000 per person, per lifetime."

Pursuant to 42 U.S.C. § 1395cc, the Secretary of the Department of Health and Human Services is authorized to enter into

agreements with hospitals or other service providers whereby the service provider is required to accept payment from Medicare for Medicare recipients based on a Medicare approved adjustment. Accordingly, based on these agreements, Medicare will "allow" certain charges and then pay all or a portion of the "Medicare-allowable amount." A secondary insurance plan, like the instant Plan, may then pay all or a portion of the amount (if any) Medicare allowed but did not pay. In this case, the Plan will pay 80% of the difference between what Medicare allows and what Medicare actually pays, after a $250 annual deductible.

Plaintiff's father was hospitalized at Robert Packer Hospital from December 31, 2008 until his death on February 17, 2009. Robert Packer Hospital submitted an "Itemized Statement" to Medicare following his hospitalization, which listed charges of $267,505.50[2]. Medicare accepted the charges and adjusted the claim by $208,735.22, leaving a balance of $58,770.28. Based on a prior agreement with the Hospital, Medicare then paid the hospital $58,770.28. Also based on this agreement, the outstanding balance due to the Hospital was $0.00, because the Hospital had agreed to

---

[2]The total amount charged by the Hospital is unclear in the record. It is listed as $267,505.50 on the Itemized Statement to Medicare, and also as $266,573.00 on other documentation. Defendant states that the actual amount is unclear at this time however, the parties assume for the purpose of this motion that the total amount charged, prior to adjustments, was $266,573.00. The exact figure is not relevant to the Court's analysis, therefore, the Court will assume for the purpose of this motion, that the total amount is $266,573.00.

accept the amount of money Medicare "allowed" ($58,770.28), which it paid to the Hospital.

In a letter dated March 31, 2010, following his father's death and his appointment as executor of his father's estate, Plaintiff filed a claim with UHC requesting payment of $165,992.18 for his father's medical care at Robert Packer Hospital. Plaintiff attached a form provided by Medicare to the Hospital describing its payments and adjustments for the services received by his father.  Plaintiff interpreted the form to read that the amount "allowed" by Medicare was the full amount initially charged to Medicare by the Hospital. Accordingly, he asserted that the amount "allowed" by Medicare was $266,573.00 and the amount paid by Medicare was $58,770.29. Accordingly, he contended that his father's estate was entitled to 80% of the difference between these numbers, less the $250 deductible under the Plan, or $165,992.17.

UHC responded to Plaintiff's claim on June 3, 2010.  UHC explained that it had not issued a payment to him because Medicare had paid the Hospital charges, as adjusted, in full.  They specifically informed Plaintiff that he had no financial liability to the Hospital based on his father's hospitalization.

In a letter dated June 16, 2010, Plaintiff reiterated his contentions and again requested payment pursuant to his interpretation of the Plan.  Plaintiff did not dispute, nor does he dispute now, that his father's estate has no financial liability to

the Hospital.  Rather, he contended that the estate is entitled to payment under the plan, regardless of the lack of any outstanding financial liability to his father's estate.

UHC again responded to Plaintiff's letter on July 14, 2010, reiterating that the estate had no financial liability.  UHC also explained the difference between the Medicare allowable amount and the amount by which the claim was adjusted.  They specifically informed the Plaintiff that the adjusted amount is written off by the Hospital pursuant to an agreement with Medicare. Accordingly, no further payment by the Plan or the estate was due.

Plaintiff then filed this lawsuit on December 29, 2010 seeking payment under the Plan in the amount of 80% of the Medicare "allowable" amount, which he argues is $266,573.00, less the $250 deductible and the amount already paid by Medicare, $58,770.28, or $165,992.17.

## **DISCUSSION**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the party against whom summary judgment is sought. See Scott v. Harris, 550

U.S. 372, 380 (2007). If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. See Id. (citing Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-587 (1986)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

A. Local Rule 56

Pursuant to Local Rule 56 (a)1, "Upon any motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, there shall be annexed to the notice of motion a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." See W.D.N.Y. Loc. R. Civ. P. 56 (a)(1). "The papers opposing a motion for summary judgment shall include a response to each numbered paragraph in the moving party's statement...and, if necessary, additional paragraphs containing a short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. Each numbered paragraph in the moving party's statement of material facts will be deemed admitted unless specifically controverted by a

correspondingly numbered paragraph in the opposing statement." <u>See</u> <u>id.</u> 56 (a)(2). "While the consequence of this miscue is minimal given the general consensus between the parties [as shown by defendant] as to the constituent facts of this case, where a discrepancy exists this Court is obligated to and will 'deem admitted' the [moving party's] version of the facts.  At the same time, the Court is obligated to and will believe the [non-moving party's] evidence and all justifiable inferences will be drawn in [his] favor."' <u>See</u> <u>Kuchar v. Kenmore Mercy Hosp.</u>, No. 97-CV-0756, 2000 WL 210199, at *1 (W.D.N.Y.2000); <u>See also</u> <u>Duckett v. Wal-Mart Stores, Inc.</u>, No. 07-CV-6204, 2009 WL 995614, *2.

Plaintiff has not submitted a Local Rule 56 statement of material facts in dispute and has not pointed to any facts to show that there exists a material issue to be tried.  Plaintiff states in his affidavit in opposition to Defendant's motion, "there are many factual questions which have not been resolved despite the extensive documents set forth in Defendant's motion." Griffin Aff. at ¶10. However, Plaintiff may not oppose a motion for summary judgment by conclusively stating that there are issues of fact, rather, he must "set out specific facts showing a genuine issue for trial." <u>See</u> Fed.R.Civ.P. 56(e)(2); <u>see also</u> <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir.1998) ("non-moving party may not rely on mere conclusory allegations nor speculation, but instead

must offer some hard evidence showing that its version of...events is not wholly fanciful."

Plaintiff also contends in his affidavit that there is a question of fact as to what UHC considers "reasonable and customary charges" under the Plan, a phrase appearing in several Plan provisions which are the subject of this suit. For example, the Plan provides, "When a Corning medical plan is the secondary payer, it pays benefits so that your total medical plan does not exceed 100% of <u>reasonable and customary charges</u> for the covered service." However, the meaning of this particular phrase is not relevant to the outcome of this case because, as set forth below, the case turns on UHC's interpretation of other Plan provisions. Therefore, UHC's calculation of "reasonable and customary charges," even if in dispute, is not material and cannot preclude an entry of summary judgment. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (2005)("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").

## B. ERISA Standard of Review

In an ERISA action challenging a denial of benefits, a court applies a _de novo_ standard of review, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." <u>See</u> <u>Krauss v. Oxford Health Plans, Inc.</u>, 517 F.3d 614, 622

(2d Cir. 2008)(quoting <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)).   Here, the Plan granted "full discretionary authority" to the Plan Administrator to interpret Plan provisions and determine eligibility for benefits.   The Plan Administrator then delegated that authority to UHC, through an Administrative Services Agreement.   Accordingly, this Court will review UHC's determination that Plaintiff was not entitled to payment pursuant to the arbitrary and capricious standard of review.   Under the arbitrary and capricious standard of review, the court's review is limited, and a denial of benefits may only be overturned where it was "without reason, unsupported by substantial evidence or erroneous as a matter of law." <u>Pagan v. NYNEX Pension Plan</u>, 52 F.3d 438 (2d Cir. 1995).

### C. UHC's Determination was not Arbitrary and Capricious

Plaintiff argues the Plan is an "indemnity plan," which he defines as an obligation "to pay in a predetermined manner the amount under the policy."   He further contends that, "[t]he agreement and Plan of the Defendant do <u>not</u> say the amount the Plan would pay is the difference between what Medicare allowed, as adjusted, or subject to any credits, or subject to negotiations or any contract between the Plan and provider." Griffin Aff. at ¶¶ 12-14.

Plaintiff does not dispute the fact that the estate has no financial liability to the Hospital.   Rather, he argues that his

father's estate should be entitled to 80% of the difference between the Medicare allowable amount and the Medicare paid amount, less $250, notwithstanding the fact that Medicare adjusted the claim down to $58,770.28 and then paid the Hospital $58,770.28. He states that certain documentation he received listed the Medicare "allowable" amount as $266,573.00. He also contends that because the Plan does not discuss an "adjustment" or any agreement between the Hospital and Medicare, that this adjustment must be ignored and the estate is entitled to the money outright. This Court finds that Plaintiff's arguments are without merit.

Plaintiff ignores language in the Plan that reads: "If you or members of your family are covered by ... a government medical insurance program, ... your total benefits from all sources will be limited to 100% of reasonable and customary charges for the medical expenses <u>incurred</u>." UHC interprets this language to mean that the insured party must have an actual financial liability to be entitled to a financial benefit under the Plan. This Court finds that this interpretation of the Plan is entirely in line with the plain meaning of this clause, and therefore is not arbitrary and capricious. The definition of "incur" is "to suffer or bring on oneself (a liability or expense)." <u>See</u> Black's Law Dictionary, Seventh Edition, 1999. Plaintiff admits that the estate did not suffer a financial liability based on his father's hospitalization, accordingly, his claim for benefits is without merit.

Further, UHC's determination that Plaintiff was not eligible for benefits based on the evidence submitted was reasonable and supported by substantial evidence.  UHC examined Plaintiff's claim, and discussed his contentions with both the Hospital and Medicare to confirm that he did not have any financial liability to the Hospital, and to confirm that the Medicare "allowable" amount was in fact $58,770.28.   UHC utilized Medicare's adjustment in calculating the Medicare "allowable" amount, and determined that they did not owe the estate or the Hospital any money, because Medicare had paid the adjusted claim in full.  This interpretation is substantially supported by the record. Plaintiff's mistaken belief that he was entitled to payment based on certain plan provisions which he interprets differently does not render UHC's interpretation arbitrary and capricious.

This Court finds that Plaintiff's version of the facts is "so blatantly contradicted by the record" that no reasonable jury could find in his favor. See Scott, 550 U.S. at 380. Accepting Plaintiff's arguments would allow for an unintended windfall, which this Court can not endorse.  Accordingly, Defendant's Motion for Summary Judgment is granted and Plaintiff's Complaint is dismissed with prejudice.

## **CONCLUSION**

For the reasons set forth above, this Court finds that Defendant's decision to deny plaintiff benefits was not arbitrary and capricious. Defendant's Motion for Summary Judgment is granted and Plaintiff's Complaint is hereby dismissed with prejudice.


ALL OF THE ABOVE IS SO ORDERED.


                                     s/ Michael A. Telesca
                                  MICHAEL A. TELESCA
                               United States District Judge

Dated:    Rochester, New York
          August 16, 2011